Case No. 24-5119

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BLACK FARMERS AND AGRICULTURALISTS ASSOCIATION INC.,
THOMAS BURRELL, MARY FERGUSON, CLAUDETTE JACKSON,
MAUZIE FURLOW AND ALLIE TILLIS

Plaintiffs-Appellants

VS.

THOMAS J. VILSACK AND ZACH DUCHENEAUX

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
CASE NO.  2:23-CV-2527-SHL-cgc

BRIEF OF APPELLANTS

ORAL ARGUMENT REQUESTED

Percy Squire, Esq. (0022010)
341 S. Third Street, Suite 10
Columbus, Ohio 43215
614-224-6528 (T)
614-224-6529 (F)
psquire@sp-lawfirm.com
Counsel for Appellants

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

## BLACK FARMERS AND AGRICULTURALISTS ASSOCIATION INC., THOMAS BURRELL, MARY FERGUSON, CLAUDETTE JACKSON, MAUZIE FURLOW AND ALLIE TILLIS

**Appellants-Appellants**

**VS.**

## THOMAS J. VILSACK AND ZACH DUCHENEAUX

**Appellees-Appellees**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
## CASE NO. 2:23-CV-2527-SHL-cgc

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS</u>

Pursuant to 6th Cir. R. 26.1, Appellants make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   No.

_s/Percy Squire, Esq._____         June 7, 2024
Percy Squire, Esq.
Counsel for Appellants

# TABLE OF CONTENTS

## Table of Contents

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS.......................................................................................................... i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................................1

STATEMENT OF JURISDICTION........................................................................2

STATEMENT OF THE ISSUES FOR REVIEW ....................................................3

STATEMENT OF THE CASE................................................................................4

STATEMENT OF THE FACTS .............................................................................5

SUMMARY OF THE ARGUMENT .......................................................................7

STANDARD OF REVIEW ....................................................................................9

ARGUMENT .....................................................................................................10

    I.   INTRODUCTION ..................................................................................... 10

    III. FAILURE TO STATE A CLAIM ............................................................. 17

    IV. PRELIMINARY INJUNCTION .............................................................. 19

    V.  REVIEW OF USDA ACTION – "ARBITRARY AND CAPRICIOUS" TEST ............ 20

    VI.  DUE PROCESS ................................................................................... 32

    VII.  IRREPARABLE HARM ....................................................................... 35

    VIII. HARM TO OTHERS AND PUBLIC INTEREST ................................... 36

CONCLUSION ..................................................................................................37

CERTIFICATE OF COMPLIANCE......................................................................38

CERTIFICATE OF SERVICE ..............................................................................38

ADDENDUM .....................................................................................................39

# TABLE OF AUTHORITIES

**Cases**

A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495,542 (1935) ..........30

ACLU v. McCreary County, 354 F. 3d 438 (6th Cir. 2003). ..................................35

Armstrong v. Manzo, 380 U.S. 545, 552 (1965) ....................................................33

Bennett v. Spear, 520 U.S. 154, 177-78 (1997)......................................................20

Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 367 U. S. 895 (1961)................................................................................................................32

Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974) ......................37

City of Memphis v. Greene, 451 U.S. 100, 122-24, 101 S. Ct. 1584, 67 L. Ed. 2d 769 (1981)...........................................................................................................23

Consolo v. Federal Maritime Commission, 383 U.S. 607 (1966). .........................22

Davis v. Jellico Community Hosp., Inc., 912 F.2d 129 (6th Cir. 1992)....................9

Dayton Area Chamber of Commerce, et al. v. Xavier Becerra, S.D. Ohio Case No. 3:23-cv-00156..................................................................................................29

Fayette County, 118 F. Supp. 3d at 1349................................................................37

Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006) (Hispanic farmers ...................14

Garcia v. Veneman, No. 1:00cv-02445 (D.D.C. June 30, 2006)............................12

Gerber v. Herskovitz, 14 F.4th 500 (6th Cir. 2021)..................................................23

Gilbert v. Homar, 520 U.S. 924, 930-32 (1997).....................................................34

Goldberg v. Kelly, 397 U.S. 254 (1970)..................................................................32

Gundy v. United States, 139 S. Ct. 21 16, ..............................................................31

J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928) ...................31

Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123, 341 U. S. 168 (1951)................................................................................................................32

Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422-437, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968); ....................................................................................................25

Keepseagle v. Veneman, No. 1:99-cv-03119 (D.D.C. Feb. 11, 2008), ECF No. 460 (Native American farmers) .......................................................................... 12, 13

Ky. Dept. of Corr. V. Thompson, 490 U.S. 454, 460 (1989) ...................................33

Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006) (female farmers).........................15

Love v. Veneman, No. 1:00-cv-02502 (D.D.C. July 13, 2012), ECF No. 160
    (female farmers) ............................................................................. 12, 13

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ....................................................33

Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154
    (6th Cir. 1991) ............................................................................................35

Moody v. Mich. Gaming Control Bd., 847 F. 3d 399, 402 (6th Cir. 2017). .............9

Motor Vehicle Mrfs v. Association v. State Farmers Mmt. Auto Insurance
    Company, 463, U.S. 29 (1983)..............................................................................21

Obama for America v. Husted, 697 F.3d 423 (6th Cir. 2012)............................ 35, 36

Panama Relining Co. Ryan, 293 U.S. 388 (1935) .......................................... 30, 31

Pigford v. Glickman , 185 F.R.D. 82, 86 (D.D.C. 1999)............................. 11, 13, 14

S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 852
    (6th Cir. 2017) ............................................................................................36

State of. Ohio ex rel. Celebrezze .............................................................................35

Sullivan v. Little Hunting Park, supra, ....................................................................25

Tennessee v. United States Department of Agriculture, Case No. 3:22-cv-257,
    2023 WL 3048342 at 14(E.D. Tenn. March 29, 2023) .........................................7

The Estate of Earnest Lee Boyland, el al. v. United Slates Department of
    Agriculture, Case No. 17-5082......................................................................11

Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 439, 93 S. Ct. 1090,
    35 L. Ed. 2d 403 (1973)................................................................................25

United Stales v. Garfinkel, 29 F.3d 451, 458-59 (8th Cir. 1994) ...........................31

United States v. Bozarov, 974 F.2d 1037, 1042 (9th Cir. 1992) .............................31

United States v. Brewis, 49 F.3d 1162 (6th Cir. 1995)...........................................24

United States v. Greer, 939 F.2d 1076, 1091 (5th Cir. [**6] 1991), aff'd en banc,
    968 F.2d '433 (5th Cir. 1992), cert. denied, 113 S. Ct. 1390 (1993). ..................24

Virginia Petroleum Jubbers Association v. Federal Power Commission, 259 F. 2d
    921 (D.C. Cir. 1958).....................................................................................21

Wayman v Southard, 23 U.S. (10 Wheat.) 1, 42-43 (1825). ...................................30

Wingle v. JP Morgan Chase Bank, 537 F. 3d 565, 572 (6th Cir.)..............................9

<u>Winston v. Lear-Siegler, Inc.</u>, 558 F.2d 1266 (6th Cir. 1977)..................................25

<u>Wis. Gas Co. v. F. E. R. C.</u>, 758 F.2d 699, 674 (D.C. Cir. 1985) ..........................35

<u>Wis. Gas Co. v. Fed. Energy Regal Comm 'n</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) ...........................................................................................................35

<u>Yakus v. United States</u>, 321 U.S. 414, 426 (1944)..................................................31

## Other Authorities

42 U.S.C. § 1981 ......................................................................................................25

42 U.S.C. §1982............................................................................................ passim

Inflation Reduction Act (hereinafter "IRA") Pub. L. 117-169 136 Stat. 1818  10, 11

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 741, 112 Stat. 2681 .......................................................13

## Rules

Fed. R. Civ. P. 12(b)(6)..............................................................................................2

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Oral argument should be granted in this appeal because it involves the following questions of first impression or national interest:

1. What standard is applicable under Article III of the United States Constitution to a district court's review of Agency action implementing  Inflation Reduction Act legislation intended  by Congress to provide financial assistance to farmers discriminated against in United States Department of Agriculture (hereinafter "USDA") loan programs prior to January 1, 2021.

2. Whether the exclusion by USDA of the estates of deceased Black farmers from participation in USDA's Discrimination Financial Assistance Program ("DFAP") authorized by the Inflation Reduction Act violates 42 U.S.C. §1982 because it perpetuates  historic racial discrimination by USDA against Black farmers that deprived these farmers of land that would otherwise  have been devisable.

## STATEMENT OF JURISDICTION

Jurisdiction over this appeal arises in the United States Court of Appeals for the Sixth Circuit under the provisions of 28 U.S.C. §1291 in that the district court issued a final judgment granting Appellees' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), on January 9, 2024 RE 74 Page ID #742.  Appellants timely filed a notice of appeal on February 2, 2024, within thirty (30) days of entry of the district court's final order. RE. 76.

## STATEMENT OF THE ISSUES FOR REVIEW

1.  Whether the district court applied the proper standard of review to Appellants'
    challenge to the exclusion by USDA of decedents' estates from DFAP.

2.  Whether the plain language of §22007 of the Inflation Reduction Act excludes
    claims on behalf of decedents' estates.

3.  Whether excluding claims by estates of deceased Black farmers from the
    United States Department of Agriculture Discrimination Financial Assistance
    Program ("DFAP") violates 42 U.S. §1982.

4.  Whether the USDA policy of exclusion of decedents' estates from DFAP
    violates Separation of Powers and/or Due Process.

## STATEMENT OF THE CASE

On October 16, 2023, Appellants Black Farmers & Agriculturalists Asso. Inc. ("BFAA"); Thomas Burrell, Mary Ferguson; Claudette Jackson and Mauzie J. Furlow (collectively "Appellants"), brought this consolidated putative class action against Appellees, Thomas J. Vilsack and Zach Ducheneaux. (ECF Docket No. 41). On October 31, 2023 Appellants filed a Corrected Second Motion for Preliminary Injunction (ECF Docket No. 54). Appellees Consolidated Brief in Opposition to Appellees' Second Motion for a Preliminary Injunction and in Support of Appellees' Cross-Motion to Dismiss (ECF Docket No. 64-1), was filed on November 11, 2023. Appellees' Reply brief (ECF Docket No. 68) was filed on November 23, 2023, and Appellees Reply (ECF Docket No. 72) on December 7, 2023.

On January 9, 2024, the district court denied Appellants' Motion for Injunctive Relief and granted Appellees' Motion to Dismiss. ECF Docket No. 74. Appellants Notice of Appeal was filed on February 2, 2024. ECF Docket No. 76.

## <u>STATEMENT OF THE FACTS</u>

Appellants sought judicial review of final agency action by the United States Department of Agriculture in connection with implementation of Section 22007 of the Inflation Reduction Act (hereinafter "IRA") Pub. L. 1 17-169 136 Stat. 1818. The IRA was signed into law by President Biden on August 16, 2022. The IRA provides $2.2 Billion dollars in financial assistance to farmers, ranchers and forest landowners who prior to January I, 2021, experienced discrimination in a USDA Farm lending program. Following enactment of the IRA, USDA undertook measures to implement Section 22007. In that connection, USDA initially announced on July 7, 2023, that USDA had established a Discrimination Financial Assistance Program, (hereinafter "DFAP") Under DFAP persons discriminated against in a USDA loan program prior to January I, 2021, were initially required to submit applications for financial assistance by October 31, 2023. On September 23, 2023, USDA extended the October 31, 2023 deadline until January 13, 2024. Appellants originally alleged the January 13, 2024 deadline is arbitrary and capricious, violative of separation of powers and Due Process for the reason BFAA members such as Appellants Jackson and Ferguson, with legacy applications, those being submitted on behalf of deceased farmers whose heirs must obtain probate court or other judicial authority in order to apply, the complexity of the USDA application process and past experience indicate the deadline was both untenable and unlawful.

In past instances where USDA had provided financial assistance to farmers discriminated against by USDA, discrimination claimants were required to submit a mere three page application for relief financial assistance and the application window was open for significantly longer. See, Exhibit A, ECF Docket No. 1-1, Page ID #18, for a copy of the current DFAP application. The application is 40 pages in length. The application window although extended, was for a mere 74 days and January 13, 2024 did not allow sufficient time for legacy applicants to apply. There was no authority in Section 22007 for a shortened application period. The shortened application window was unjustified as Congress stated in §22007 that funds are available for financial assistance until September 30, 2031. Appellants were aggrieved by the shortened application window, and the exclusion of legacy claims, on behalf of Black farmers who had experienced decades of racial discrimination at the hands of USDA, discrimination which BFAA was organized to fight and has been fighting since BFAA's inception.

.

## SUMMARY OF THE ARGUMENT

Under 5 U.S.C. §706(2) judges are required to decide all relevant questions of law, interpret constitutional and statutory provisions and hold unlawful and set aside agency action that exceeds governmental authority. Instead of applying this Article III driven mandate, here the district court, without legislative basis, deferred to an inferior but articulable policy preference of USDA, namely the exclusion of decedents' estate or legacy claim from DFAP participation. The district court justified its limited review of USDA's policy preference on grounds that the narrow standard of review established in <u>Tennessee v. United States Department of Agriculture</u>, Case No. 3:22-cv-257, 2023 WL 3048342 at 14(E.D. Tenn. March 29, 2023) required the court to uphold the USDA policy excluding legacy claims because the USDA "path was reasonably discernable." See, ECF Docket No. 74, PAGE ID #741. Specifically, the district court stated: "Under this narrow standard of review…an agency must examine the relevant data and articulate a satisfactory explanation for its action." The district courts limited review resulted in its failure to consider historical precedents, context, legislative history or USDA's documented record of racial discrimination all resulted in a denial of a fair hearing to Appellants in connection with their request for an injunction. The district court failed to perform its Article III role.

The decision of the district court should also be reversed for the additional reason the USDA rule excluding Legacy claims violates 42 U.S.C. §1982 in that it perpetuates the consequences of Black farmers' inability to devise land lost through past USDA discrimination in lending . For this  additional reason the DFAP policy excluding estates is  arbitrary and capricious, rendering it due to be set aside under §706.In connection with the resolution of Appellants' challenge to the unlawful exclusion by USDA of decedent estates claims, referred to hereinafter as "Legacy Claims" from DFAP eligibility the district court abandoned its duty under §706 of the Administrative Procedures Act to independently determine the law.

 Aside from the above ,the district court failed to meaningfully address Appellants 42 U.S.C. §1982 argument, having accorded a one sentence remark to it in a footnote. See RE 74,PAGE ID#742 footnote 2.

This appeal asserts the position that the manner in which the district court adjudicated Appellants' claims violated the Court's Constitutional duty to exercise independent judicial judgment rather than mechanistically yielding to supposed agency wisdom.

## STANDARD OF REVIEW

This court reviews a 12(b)(6) dismissal de novo, <u>Wingle v. JP Morgan Chase Bank</u>, 537 F. 3d 565, 572 (6th Cir.) The Court accepts an Appellant's factual allegations as true and view[s] the complaint in the light most favorable to the Appellant, but [is] not required to accept legal conclusions or unwarranted factual inferences as true." <u>Moody v. Mich. Gaming Control Bd.</u>, 847 F. 3d 399, 402 (6th Cir. 2017).

**ARGUMENT**

## I.    INTRODUCTION

Appellants, the Black Farmers and Agriculturalists Association, Inc. (hereinafter "BFAA") Thomas Burrell, Mary Ferguson, Claudette Jackson, Allie Tillis and Loretta Dixon, sought judicial review of final agency action by the United States Department of Agriculture in connection with implementation of Section 22007 of the Inflation Reduction Act (hereinafter "IRA") Pub. L. 117-169 136 Stat. 1818.  The IRA was signed into law by President Biden on August 16, 2022.  The IRA provides $2.2 Billion dollars in financial assistance to farmers, ranchers and forest landowners who prior to January 1, 2021 experienced discrimination in a USDA farm lending program. Following enactment of the IRA, USDA undertook measures to implement Section 22007.  In that connection, USDA announced on July 7, 2023, that USDA had established a Discrimination Financial Assistance Program, (hereinafter "DFAP") Under DFAP persons discriminated against in a USDA loan program prior to January 2021 were initially required to submit applications for financial assistance by October 31, 2023.  Appellants previously sought an order suspending the October 31, 2023 application deadline as arbitrary and capricious, violative of separation of powers and Due Process for the reason BFAA members with legacy applications, those being submitted on behalf of

deceased farmers whose heirs must obtain probate court or other judicial authority in order to apply, the complexity of the USDA application and the absence of authority within §22007 from Congress for the short application window, rendered the October 31, 2023 deadline untenable. ECF Docket No. 21.

On September 23, 2023, USDA extended the DFAP application deadline until January 13, 2024. This extension failed to overcome the additional burdens imposed by the DFAP regimen on deserving applicants.

## II.    HISTORY

Over the past several years, USDA has resolved discrimination lawsuits with several different groups of farmers. These lawsuits, challenged discrimination in USDA's lending programs. The United States Circuit Court of Appeals stated in The Estate of Earnest Lee Boyland, el al. v. United Slates Department of Agriculture, Case No. 17-5082, a case involving BFAA members, "farmers' bottom lines fluctuate with the weather and crop prices, so "many farmers depend heavily on the credit and benefit programs of the United States Department of Agriculture to take them from one year to the next." Pigford v. Glickman , 185 F.R.D. 82, 86 (D.D.C. 1999) (footnote omitted). If a farmer's crops fail, "he may not have sufficient resources to buy seeds to plant in the following season"; if he needs a new grain harvester, "he often cannot afford to buy the harvester without an extension of credit." Id. "Because of the seasonal nature of farming, it also is of utmost

importance that credit and benefit applications be processed quickly or the farmer may lose all or most of his anticipated income for an entire year." Id.

The Boyland Court stated, "public protests over discrimination in USDA's credit and benefit programs spurred the Department to investigate. That scrutiny uncovered a widespread pattern of discrimination in the Department's agricultural credit and benefit programs. In 1996, then-Secretary of Agriculture Dan Glickman appointed a Civil Rights Action Team to assess the Department's history of racial discrimination and recommend changes. See id. at 88. The Action Team documented extensive economic harm to minority farmers from discrimination in USDA programs. See id. at 86-88. That discrimination owed partly to USDA's practice of delegating loan application decisions to small, local committees in each county. Id. at 86. The county committees were far less diverse than the communities they served. Id. at 87. USDA denied or delayed processing loan applications, approved insufficient amounts, discriminatorily denied access to loan servicing options, or imposed restrictive conditions on loans because of the applicants' race, sex, or ethnicity. See Fourth Am. Compl. 3, Love v. Veneman, No. 1:00-cv-02502 (D.D.C. July 13, 2012), ECF Docket No. 160 (female farmers); Eighth Am. Compl. 2, Keepseagle v. Veneman, No. 1:99-cv-03119 (D.D.C. Feb. 11, 2008), ECF Docket No. 460 (Native American farmers); Third Am. Compl. 13, Garcia v. Veneman, No. 1:00cv-02445 (D.D.C. June 30, 2006), ECF Docket No. 144 (Hispanic farmers);

<u>Pigford I</u>, 185 F.R.D. at 87 (black farmers).  claims formed the core of the four lawsuits filed against USDA on behalf of black, Native American, women, and Hispanic farmers.

In 1998, Congress responded to the farmers' predicament by lifting the time bar for farmers who had made timely efforts to seek administrative redress for credit discrimination but were stymied by the dysfunction at USDA. See 7 U.S.C. § 2279 note (Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No.  105-277, § 741, 112 Stat. 2681) ("Appropriations Act"). The Appropriations Act tolled the statute of limitations for two years after its passage from October 1998 to October 2000— for people who (1) alleged non-employment-related discrimination by USDA occurring between January 1, 1981, and December 31, 1996, and (20 had filed a complaint with USDA before July 1, 1997.

To date, USDA has resolved the discrimination lawsuits of four groups of farmers. For each group, the only farmers permitted to participate in the claims-resolution processes established in response to these cases were those who had, before the suits were filed, complained in some manner of USDA's discrimination. Framework for Hispanic or Female Farmers' Claims Process ¶¶ VIII.A VII.B, VIII.C.1 g. <u>Love</u>, No.  1:00-cv-02502 (D.D.C. Jan. 20, 2012), ECF Docket No. 155-1 ("<u>Garcia/ Love Framework</u>"); <u>Keepseagle</u>, No.  1:99-cv-03119, 2001 W1, 34676944, at *6 (D.D.C. Dec. 12, 2001); <u>Pigford I</u>, 185 F.R.D. at 92.

USDA settled with the class of Black Farmers first, in 1999, in <u>Pigford I</u>. 185 F.R.D. 82. The court approved the creation of a two-track dispute resolution mechanism for distributing proceeds to claimants. Under that process, claimants with less documentary evidence of discrimination received capped payments, while claimants with more documentary evidence could seek to prove and recover actual damages. <u>Pigford I,</u> 185 F.R.D. at 95-97.

> In order to be eligible for relief, a claimant must submit his completed claim package to the facilitator postmarked within 180 days of the date of entry of this Consent Decree, except that a claimant whose claim is otherwise timely shall have not less than 30 days to submit a declaration pursuant to subparagraph (b)(iii), above, after being

> (g) A claimant who satisfies the definition of the class in ¶ 2(a), above, but who fails to submit a completed claim package within 180 days of entry of this Consent Decree may petition the Court to permit him to nonetheless participate in the claims resolution procedures. The Court shall grant such a petition only where the claimant demonstrates that his failure to submit a timely claim was due to extraordinary circumstances beyond his control.

> <u>Pigford v. Glickman</u>, 185 F.R.D. 82 (D.D.C. 1999) (Emphasis added.)

The process established in <u>Pigford I</u> became a template for the other cases. Next, USDA settled a class action suit with Native American farmers. See <u>Keepseagle</u>, No. 1:99-cv-03119, 2012 WL 13098692, at *1 (D.D.C. Dec. 28, 2012). Similar lawsuits by Hispanic and female farmers followed, but did not result in class-wide settlements because neither case was certified as a class action. <u>Garcia v. Johanns</u>, 444 F.3d 625 (D.C. Cir. 2006) (Hispanic farmers); <u>Love v. Johanns</u>, 439

F.3d 723 (D.C. Cir. 2006) (female farmers). Instead, USDA voluntarily created a joint claims process for both Hispanic and female farmers. See Garcia/Love Framework. Claimants who wished to recover under the Garcia /Love Framework agreed, in the claim packets they submitted, to release their individual claims against USDA. See id. ⁋ 5; Settlement Agreement, Love, No. 1:00-cv-02502 (D.D.C. Feb. 3, 2017), ECF Docket No. 2751.

Despite the various efforts outlined above discrimination problems have continued to plague USDA's lending programs.

As a result, Congress enacted a race-based discrimination loan-forgiveness program in the American Rescue Plan of 2021 (ARPA). Among other things, ARPA provided debt relief to "socially disadvantaged" farmers and ranchers. The phrase "socially disadvantaged" included racial classifications. To be eligible for ARPA's debt relief, farmers and ranchers had to be Black or African American, American Indian or Alaskan native, Hispanic of Latino, or Asian American or Pacific Islander. This program was codified in §1006 of ARPA.

The race-based criterion for relief under §1006 of the ARPA, was challenged in multiple cases that alleged that these racial classifications violated the Equal Protection Clause of the United States Constitution. The program was therefore suspended.

In response to Equal Protection challenges §1006 of the ARPA was amended by §22007 of IRA.

Section 22007 states:

Section 1006 of the American Rescue Plan Act of 2021 (7 U.S.C. 2279 note; Public Law 117-2) is amended to read as follows:

(e) DISCRIMINATION FINANCIAL ASSISTANCE.—In addition to amounts otherwise available, there is appropriated to the Secretary of Agriculture for fiscal year 2022, to remain available until September 30, 2031, out of any money in the Treasury not otherwise appropriated, $2,200,000,000 for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture farm lending programs, under which the amount of financial assistance provided to a recipient may be not more than $500,000, as determined to be appropriate based on any consequences experienced from the discrimination, which program shall be administered through 1 or more qualified nongovernmental entities selected by the Secretary subject to standards set and enforced by the Secretary. (Emphasis added.)

On July 7, 2023 USDA published application guidelines to implement §22007.

Among these guidelines is a no exceptions January 13, 2024 application deadline.

Also among the DFAP guidelines are eligibility requirements that contradict the terms of Section 22007 of the IRA which amended Section 1006 of the ARPA.

In March 2021, Congress passed the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021), which provided economic aid and support to the agricultural sector. See §§ 1001-1007. Section 1005 of ARPA provided for

payments of up to 120 percent of certain USDA farm loan debts held by "socially disadvantaged farmer[s] or rancher[s]," a group defined to include those who "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." § 1005; 7 U.S.C. § 2279(a)(5)-(6). In addition, Section 1006 provided for "financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary." § 1006. Pub. L. 117-169, 136 Stat. 1818 §§ 22007-08.

## III.   FAILURE TO STATE A CLAIM

Appellees contend that Appellants' Amended Complaint failed to state a claim. Appellants respectfully disagree. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the Appellee fair notice of what the...claim is and the grounds upon which it rests.' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). When evaluating a 12(b)(6) motion to dismiss, an Appellant's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the Appellant.

However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]: Id. A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief'" Francis v. Giacomelli, 588 F.3d 186, 193 (4111 Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombly, 550 U.S. at 557). Thus, if "the well-pleaded facts contained within a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not `show[n]' — 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

USDA asserted that the action here by USDA was not final.

The APA allows judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. For an agency action to qualify as final, the action must (1) "mark[] the consummation of the agency's decision making process" and (2) either determine "rights or obligations [or produce] legal consequences." Texas v. EEOC, 933 F.3d 433, 441 (5th Cir. 2019) (quoting Bennett v. Spear, 520 U.S. 154,177-78 (1997)). This is "a jurisdictional prerequisite of judicial review." Louisiana v. U.S. Army Corps of Eng'rs, 834 F.3d 574,584 (5th

Cir. 2016). Appellees contend DFAP didn't consummate USDA's decision making process. That's because a policy statement isn't final until the agency applies it "in a particular situation" to an affected person or entity. Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 253 (D.C. Cir. 2014) (quotation omitted). Here DFAP is the policy of USDA. USDA has made a decision to exclude Legacy. Likewise with the second finality prong. The action of DFAP staff of forbidding Legacy applications produces consequences (reiterating that binding effect upon the agency is the key inquiry and explaining that " [w]hether an action binds the agency is evident if it either appears on its face to be binding[] or is applied by the agency in a way that indicates it is binding" (quotation omitted)).These facts establish that DFAP was final agency action.

## IV.    PRELIMINARY INJUNCTION

Preliminary injunctions are "extraordinary remedies] never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Green, 553 U.S. 674, 689-90 (2008)). Courts should order preliminary injunctions "only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002) (citing Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000)).

To determine whether a preliminary injunction should issue, the Court must balance four factors: "(I) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." id. The harm to others "and the public interest factors 'merge when the Government is the opposing party.'" Wilson v. Williams, 961 F.3d 829, 844 (6th Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418 (2009)). Sixth Circuit precedent dictates that "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Commonwealth v. Beshear, 981 F.3d 505, 508 (6th Cir. 2020).

## V.     REVIEW OF USDA ACTION – "ARBITRARY AND CAPRICIOUS" TEST

The principal statute authorities that govern USDA action in connection with implementation of §22007 are 5 U.S.C. §§ 701-706 which codify Section 10 of the Administrative Procedure Act under §702 a person suffering a legal wrong or who is adversely affected or aggrievedly agency action.

Judicial review was sought by Appellants of USDA action which is final and for which there is no other adequate remedy. The appropriateness of review of this nature was recognized in Bennett v. Spear, 520 U.S. 154, 177-78 (1997). The USDA

actions complained of herein constitute the consummation of USDA's decision making. Legal consequences flow from USDA's action because assistance is only available in accordance with the terms complained of here by Appellants. Accordingly, this Honorable Court has authority under §705 of the Administrative Procedure Act to enjoin USDA's actions complained of here. See, <u>Virginia Petroleum Jubers Association v. Federal Power Commission</u>, 259 F. 2d 921 (D.C. Cir. 1958).

The actions complained of herein are not authorized under §22007. This Court therefore has authority to review the measures complained under "the arbitrary, capricious, abuse of discretion" standard. See, <u>Motor Vehicle Mrfs v. Association v. State Farmers Mmt. Auto Insurance Company</u>, 463, U.S. 29 (1983).

Under the arbitrary and capricious test, the actions complained of by Appellants here should be enjoined or at a minimum suspended temporarily.

Specifically USDA's actions should be enjoined because:

1. USDA's application procedures rely on impermissible factors;

2. There is no reasonable relationship between the challenged factors and §22007;

3. The actions are not supported by reason;

4. USDA has failed to consider key aspects of the procedures enacted;

5. The procedures are inconsistent with prior USDA actions to address discrimination;

6. USDA has not considered alternative solutions;

7. USDA has failed to respond to questions concerning the January 14, 2024 deadline; and

8. The Sanction for noncompliance is draconian.

See, <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607 (1966).

## A.     RELIANCE ON IMPERMISSIBLE FACTORS

The USDA rule that that excludes legacy applications from DFAP eligibility denies equal rights to Appellants with respect to inheriting property in violation of 42 U.S.C. §1982.

Congress has enacted §22007 to address long standing discrimination by USDA. Among the historic wrongs perpetuated by USDA and recognized in the <u>Pigford</u> litigation, was the intentional racially motivated denial of farm loans to Black Farmers. This intentional racial discrimination resulted not only in the loss of credit by the applicants, it also resulted in the denial of the right of the discriminated against applicant's heirs to inherit, purchase, lease, sell, hold and convey real and personal property in violation of 42 U.S.C. §1982. In other words, but for USDA's racially specific discrimination against Blacks, many BFAA members, such as Ms. Ferguson and Ms. Jackson, as well as BFAA associates such as Ms. Tillis, these individuals would have the same right to inherit as White citizens whose forebearers were not denied USDA loans on the basis of race. See, ECF Docket No.  28-1 "Burrell Declaration. ECF Docket No.   2901 "Ferguson Declaration and ECF

Docket No. 29-2, "Jackson Declaration". The Declaration of Allie Tillis is attached as Exhibit A.

The current USDA exclusion of legacy applications, perpetuates this past discrimination. The United States Court of Appeals stated in <u>Gerber v. Herskovitz</u>, 14 F.4th 500 (6th Cir. 2021).

> 42 U.S.C. Sec. 1982. Section 1982 guarantees to all citizens the same rights "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To violate the statute, the challenged action must impair a property interest, say by decreasing the value of the property or making it significantly more difficult to access. <u>City of Memphis v. Greene</u>, 451 U.S. 100, 122-24, 101 S. Ct. 1584, 67 L. Ed. 2d 769 (1981).

Here Appellant's ancestors land was decreased in value by USDA's racially based loan denials. Moreover, the ancestors ability to bequeath land was also impaired. These USDA transgressions, which USDA has admitted and §22007 implicitly recognizes, are not subject to redress because of the irrational exclusion of legacy claims as described in the Declaration of Mr. Burrell, Ms. Jackson, Ms. Ferguson and Ms. Tillis as representatives of a putative class of aggrieved claimants.

USDA has offered no explanation for its perpetuation and its reliance on this historic discrimination in violation of 42 U.S.C. §1982.

The district Court should have given broad construction to the scope of §1982 and its impermissible violation here.

Courts have historically given broad deference to 42 U.S.C. §1982. For instance in:

> United States v. Greer, 939 F.2d 1076, 1091 (5th Cir. [**6] 1991), aff'd en banc, 968 F.2d '433 (5th Cir. 1992), cert. denied, 113 S. Ct. 1390 (1993).
>
> Section 1982 protects the right of citizens to "hold" real and personal property. It states:
>
> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
>
> Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to "prohibit all racial discrimination, private and public, in the sale and rental of property." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 20 L. Ed. 2d 1189, 88 S. Ct. 2186 (1968). In Jones, the court looked to the legislative history of Section 1982--the debates surrounding the Civil Rights Act of 1866--and explained that Section 1982 was intended to do more than destroy the discrimination embodied by the Black Codes: "It would affirmatively secure for all men, . . . the 'great fundamental rights." Id. at 432 (quoting Cong. Globe, 39th Cong., 1st Sess., 475). Included among these "basic civil rights" were the right to acquire property and the right "to go and come at pleasure." Id. In passing the Civil Rights Act of 1866, Congress assumed "that it was approving a comprehensive statute forbidding all racial discrimination affecting the basic civil rights enumerated in the Act." Id. at 435

See, United States v. Brewis, 49 F.3d 1162 (6th Cir. 1995).

> 42 U.S.C. § 1982 provides,
>
> "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Thus, just as 42 U.S.C. § 1981 requires that all citizens have an equal right to contract, 42 U.S.C. § 1982 mandates that all citizens have an equal right to hold and convey property. Both statutes, originally enacted as part of the Civil Rights Act of 1866, were intended to uproot the institution of slavery and to eradicate its badges and incidents. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422-437, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968); Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 439, 93 S. Ct. 1090, 35 L. Ed. 2d 403 (1973). And this identity of historical source and similarity of language and intent are particularly significant in view of the statement of the Supreme Court in Sullivan v. Little Hunting Park, supra, that

"A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by Section 1 of the Civil Rights Act of 1866 . . . from which § 1982 was derived." Id. 396 U.S. at 237.

See, Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir. 1977).

The USDA exclusion of Legacy claims perpetuates past USDA's infringement upon the right to inherit and bequeath property. USDA has relied upon factors such as an alleged limited resource pool, to exclude legacy claims. In the face of perpetuating racial discrimination in violation of 42 U.S.C. §1982, such a rule is arbitrary and capricious. USDA has offered no justification for this exclusion.

The DFAP process implemented by USDA relies on impermissible factors because it excludes applications merely because they are submitted on behalf of an estate. There is no permissible legisltative basis  in §22007, 42 U.S.C. §1982 or in the Constitution upon which this exclusion may lawfully be based.  Accordingly, the present DFAP rule on legacy claims fails the first arbitrary and capricious factor.

### B.     NO REASONABLE RELATIONSHIP TO STATUTORY PURPOSE

USDA has not articulated any relationship between the exclusion of estates and the purpose of §22007.  Congress has clearly stated in the IRA, §22007 is designed to compensate for decades of racial discrimination in USDA farm lending programs. USDA discrimination was more insidious in the distant past then it has been recently. The Declaration of Allie Tillis attests to the historic nature of this racial discrimination. There is no relationship known to Appellants between the ameliorative interests of §22007 and the USDA imposed estate exclusion.  This lack of a relationship is additional evidence of the arbitrary nature of the USDA rule, excluding estate claims.

   a. The exclusion of heirs filing on behalf of deceased persons. Both Pigford I and II allowed for an heir to tile on behalf of decease claimants. See Exhibit A at Section 4 (For Decease Claimants...). https://www.blackfarmercase.com/documentskjaim%20form.pdf

   b. Congress specifically instructed the USDA to allow claimants who were discriminated in obtaining a Housing Loan (15 U.S.C. Section 1691 (ECOA) from USDA[1] to be a party to the referenced settlements. See Exhibit B, Pub. Law 105-277, Section 741.

   c. The Pigford I Consent Decree made provisions for Later Filers.

   d. Pigford I claimants had appeal rights.

---

[1] The term "USDA" shall include the United States Department of Agriculture and all of its agencies, instrumentalities, agents, officers, and employees, including, but not limited to the state and county committees which administer USDA credit programs, and their staffs. Consent Decree at 1(m).

e.  <u>Pigford I and II</u> claimants were made aware of the dollar amount to receive if their claims were approved-to include tax benefits, debt relief and programmatic relief (Priority Consideration). Here, there is no specified minimum about of settlement. Both <u>Pigford I and II</u> provided either Track A ($50,000) or Tract B amounts. In re, provided either Tier I ($50,000) or Tier II amounts.

f.  Both Pigford I and II were required to have an attorney sign off on the Claim Form. See, <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970) at 270 (...right to counsel).

g.  Current Claimants are discouraged' from using associational help to assist with the filling out of Claim Form. See <u>UAW v. Brock</u>, 477 US 274 (1986) at 289-290. Moreover, the <u>Pigford I</u> Consent Decree expressly stated than USDA would work with organizations' who were otherwise working with Black farmers.

h.  Failure to give notice to know USDA applicant in previous lawsuits or previous and/or current USDA borrowers. See, declaration of Thomas Mason, Jr. (Mother Pearl Mason, deceased owing USDA for previous Operating Loans).

i.  The substantial evidence standard appears more onerous than the preponderance standard.

USDA has not articulated in its administrative record or during any of the training sessions or seminars on DFAP grounds for the exclusion of estates. See, Declaration of Ferguson and Jackson. ECF Docket No. 29-1 and 29-2.

## C.    UNSUPPORTED BY ANY REASONING OR BASED ON SERIOUSLY FLAWED REASONING

The exclusion of estates and the failure to accord sufficient time for the probate process to occur, is not supported by any reasoning articulated at the seminars attended by Appellants or in USDA's published guidance.    It is illogical

to purport to provide an administrative remedy such as DFAP to compensate for historic lending discrimination and to then exclude the estates of the person most frequently denied relief racially discriminating on grounds, ex slaves and the ancestors of Appellants. This flawed reasoning ties in closely with the failure of USDA to consider the key rationale for §22007's enactment, the correction of historic injustice by USDA upon Black farmers and their families.

### D.    INCONSISTENCY WITH PRIOR ACTIONS

In <u>Pigford</u> the application was a mere three pages. Although there was a fixed application deadline, an appeal process was provided for. See, Burrell Declaration. ECF Docket No. 28-1.

In this instance there is no appeal. This inconsistency has not been explained in any of the USDA guidelines or during seminars attended by BFAA members. See, Burrell, Jackson and Ferguson Declarations. Id.

### E.    FAILURE TO CONSIDER ALTERNATIVES

The administrative record in this matter does not indicate that USDA gave any consideration to permitting legacy applications, devising a simpler application form or providing an appeal from the January 13, 2023, if warranted. This state of matters also reflects USDA's refusal to explain to applicants such as Ferguson and Jackson reasons their decedent's applications could not be accepted. See, ECF, Docket No. 29-1 and 29-2.

## F.    DISPROPORTIONATE SANCTIONS

The blanket preclusion of legacy claims without any opportunity to appeal or obtain an extension is not justified by any authority in §22007. USDA has unilaterally imposed bright line rules that have no basis in the enabling legislation, clearly violate precedent and most importantly perpetuate past racial discrimination in violation of 42 U.S.C. §1982.

Given these facts and the testimony of Mr. Burrell, Ms. Jackson, Ms. Ferguson and Ms. Tillis, Appellants are likely to succeed on the merits of their APA claims.

Appellants are also likely to prevail on their Constitutional claims.

## G.    SEPARATION OF POWERS

Section 22007 centralizes vast power in the hands of USDA, without the ordinary protections of due process, to decide the fate of farmers who have been victimized by discrimination.

No principle is more central to the design of the Constitution than the separation of powers. See, <u>Dayton Area Chamber of Commerce, et al. v. Xavier Becerra</u>, S.D. Ohio Case No.  3:23-cv-00156.

Article I of the Constitution vests legislative Powers" in the "Congress of the United States." U.S. Const. Art. 1, § 1 . Article II vests the executive power -the

power to implement the laws in the President. Article III vests the judicial power the power to interpret the laws in the courts. [2]

To protect that fundamental separation of powers, the Supreme Court has long distinguished between certain "important subjects, which must be entirely regulated by the legislature itself" and "those of less interest," as to which Congress may afford the executive branch discretion "to fill up the details." Wayman v Southard, 23 U.S. (10 Wheat.) 1, 42-43 (1825). Id.

The Supreme Court has accordingly invalidated statutes that confer "virtually unfettered" discretion on the executive branch to control broad swaths of the private economy. A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495,542 (1935) (invalidating delegation to create code of industrial conduct that fosters "fair competition"); see also Panama Relining Co. Ryan, 293 U.S. 388 (1935) (invalidating delegation to ban petroleum shipments in excess of state production quotas).

In Schechter Poultry, the Court emphasized the lack of "judicial review to give assurance that the action of the commission is taken within its statutory authority" and the absence of "appropriate administrative procedure" to ensure due process. 295 U.S. at 533, 541 . In Panama Refining, the Court highlighted the failure

---

[2] Any power exercised by USDA must come from the President or be specifically authorized by Congress.

to constrain the executive branch with any "standard or rule" of decision. 293 U.S. at 418. Id.

Under the Supreme Court's modern precedents, a statutory delegation is invalid if it fails to constrain the agency with an "'intelligible principle.'" Gundy v. United States, 139 S. Ct. 21 16, 2129 (2019) (plurality op.) (quoting J.W. Hampton, Jr, & Co. v. United States, 276 U.S. 394, 409 (1928)). This "intelligible principle" must at least be "sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the [agency] . . . has conformed" to Congress's direction. Yakus v. United States, 321 U.S. 414, 426 (1944).

Courts have also consistently recognized that "judicial review is a factor weighing in favor of upholding a statute against a nondelegation challenge." United Stales v. Garfinkel, 29 F.3d 451, 458-59 (8th Cir. 1994) (quoting United States v. Bozarov, 974 F.2d 1037, 1042 (9th Cir. 1992)) (collecting cases). Similarly, "compliance with . . . requirements for notice and comment" enhances public accountability and thereby functions as a check on agency discretion. Id.; cf: Panama Ref Co., 293 U.S. at 415 (noting the importance of written findings).

There is no justification for USDA being permitted to arrogate until itself the powers to set a firm no extensions deadline policy, when under §22007 Congress has given USDA until September 30, 2031 to expend the funds appropriated for financial assistance.

The January 14, 2024 deadline violates separation of powers because it gives USDA total authority to set an arbitrary deadline. Accordingly, Appellants are likely to succeed on the merits.

## VI.        DUE PROCESS

The United States Supreme Court has stated:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," <u>Joint Anti-Fascist Refugee Committee v. McGrath</u>, 341 U. S. 123, 341 U. S. 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in <u>Cafeteria & Restaurant Workers Union v. McElroy</u>, 367 U. S. 886, 367 U. S. 895 (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved, as well as…

See, <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970).

Sixth Circuit has stated that… a procedural due process claim is instantly cognizable in federal court without requiring a final decision . . . from the responsible agency," because the "infirm process is an injury in itself" <u>Nasierowski Bros. Inv Co. v. City of Sterling Heights</u>, 949 F.2d 890, 894 (6th Cir. 1991) (cleaned up). Because Appellants' members are "subject to the DFAP's allegedly unconstitutional process," which has already caused them to incur significant injury, Appellants have "demonstrated injury-in-fact." <u>Rice v. Vill. of Johnstown</u>, 30 F.4th 584, 591 (6th Cir. 2022).

Treating procedural due process and other facial constitutional claims as "instantly cognizable" makes sense because where procedures are constitutionally inadequate on their face, there is no justification to force a party to endure those procedures and wait to challenge their result. See, e.g., <u>Seguin v City of Sterling Heights</u>, 968 F.2d 584, 589-90 (6th Cir. 1992) ("Because the Appellants are making a facial challenge to DFAP presentations, any procedural infirmity would not be cured by the subsequent application of the statute"); <u>Axon Enter, Inc. v. FTC</u>, 598 U.S. 175, 191-92 (2023) (recognizing that "subjection to an illegitimate proceeding" that violates the separation of powers is a "'here-and-now injury' that is "impossible to remedy once the proceeding is over" (quoting <u>Seila Law LLC' v. Consumer Fin. Prot. Bureau</u>, 140 S. Ct. 2183, 2196 (2020))); <u>Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.,</u> 172 F.3d 397, 407 (6th Cir. 1999).

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of property without adhering to constitutionally sufficient procedures. See, <u>Ky. Dept. of Corr. V. Thompson</u>, 490 U.S. 454, 460 (1989), notice and an opportunity to be heard.

The Due Process Clause requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965); see also, <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). Due process

requires procedural protections to prevent, to the extent possible, an erroneous deprivation of property. See, <u>Gilbert v. Homar</u>, 520 U.S. 924, 930-32 (1997).

Section 22007, as implemented by USDA, gives affected farmers no opportunity to be heard concerning reasons an application can not be submitted by October 31, 2023.

BFAA member legacy claims requires BFAA members to complete within the 116 day window a complex forty page application. In cases where the aggrieved farmer has died, USDA has stated heirs of these applicants must have written authority to pursue the decedent's claims. There is no authority in §22007 for such a draconian administrative deadline.

The Fifth Amendment of the United States Constitution protects individuals from deprivation by the federal government of "life, liberty, or property" without "due process of law." U.S. CONST., amend. V. To demonstrate a strong likelihood of success on the merits of a constitutional challenge at the preliminary injunction stage, Appellants must demonstrate that "no set of circumstances exists under which [the Program] would be valid." <u>U.S. v. Salerno</u>, 481 U.S. 739, 745 (1987). So, to warrant injunctive relief, Appellants must show that no set of circumstances exist where the Program would be constitutionally valid under the Fifth Amendment Due Process Clause. Id There is no set of circumstances under which failure to even consider Legacy Class is valid, because of irreparable harm.

The DFAP deadline is unconstitutional under the Fifth Amendment also and must be enjoined.

## VII.   IRREPARABLE HARM

Courts presume irreparable harm in cases involving Constitutional violations. Obama for America v. Husted, 697 F.3d 423 (6th Cir. 2012); also see ACLU v. McCreary County, 354 F. 3d 438 (6th Cir. 2003).  Here the guidelines announced by USDA precluding decedents estate applications violates Appellants rights under 42 U. S. C. §1982 and the Equal Protection Clause. Such a Constitutional violation constitutes irreparable harm, as a matter of law.

For irreparable harm to meet the standard for a preliminary injunction, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991) (citing Wis. Gas Co. v. Fed. Energy Regal Comm 'n, 758 F.2d 669, 674 (D.C. Cir. 1985)). Economic loss generally "does not constitute irreparable harm, in and of itself." State of. Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n, 812 F.2d 288, 290 (6th Cir. 1987) (citing Wis. Gas Co. v. F. E. R. C., 758 F.2d 699, 674 (D.C. Cir. 1985)). "An injury is irreparable if it is not 'fully compensable by

monetary damages.' <u>S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.</u>, 860 F.3d 844, 852 (6th Cir. 2017) (quoting <u>Obama for Am. v. Husted</u>, 697 F.3d 423, 436 (6th Cir. 2012)).

Appellants opportunity to obtain redress for decades of racial discrimination at the hands of USDA is likely dependent upon the effort reflected in §22007 to remedy past discrimination. If action is not taken at this juncture to assure that decedent's estates are entitled to file claims, Appellants will be left without a remedy given the passage of time to file complaints under the relevant statutes of limitation. For this reason the arbitrary deadline imposed by USDA will operate as a bar for racial discrimination claims by decedents against USDA.

## VIII. HARM TO OTHERS AND PUBLIC INTEREST

As stated above these prongs merge when, as here, the Government is the opposing party. <u>Wilson v. Williams</u>, 961 F.2d 529 (6th Cir. 2020). Section 22007 does not authorize Appellees to establish an expedited no exception application deadline. The irreparable injury that Appellants will suffer absent an injunction outweighs any harm Appellee will suffer if the requested injunction is granted. Appellants will suffer irreparable injury to their fundamental right to be free from unlawful discrimination. By contrast, any potential harm Appellees would have faced under the requested injunction would be substantially less

"If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." <u>Fayette County</u>, 118 F. Supp. 3d at 1349 (quoting <u>Canal Auth. of Fla. v. Callaway,</u> 489 F.2d 567, 576 (5th Cir. 1974)).

The public interests favors limiting USDA to the authority given by Congress. The public interest also favors providing relief to individuals who have been harmed by governmental action, such as denying financial relief by USDA.

## <u>CONCLUSION</u>

For the above reasons a preliminary injunction suspending the DFAP Program as presently applied is respectfully requested. It is further requested that USDA be immediately enjoined from its refusal to accept Legacy applications. It is therefore requested that the district court be reversed.

/s/ Percy Squire_____
Percy Squire (0022010)
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

In accordance with the provisions of Fed. R. App. P. 32, the undersigned certifies that this appellate brief complies with the type limitations of this Rule.

1. The brief contains no more than 7840 words in its entirety.

2. The brief has been prepared in 14-point Times New Roman typeface using Microsoft Word.

*s/Percy Squire, Esq.*
Percy Squire, Esq. (0022010)


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the electronic mail service, June 7, 2024, upon counsel of record

*s/Percy Squire, Esq.*
Percy Squire, Esq. (0022010)

# ADDENDUM

| | |
|---|---|
| Amended Complaint | RE 41 PAGE ID #328 |
| Second Motion for Preliminary Injunction | RE 54 PAGE ID #457 |
| Cross Motion to Dismiss for Lack of Jurisdiction | RE 64 PAGE ID #540 |
| Response to Cross Motion to Dismiss for Lack of Jurisdiction | RE 68 PAGE ID #670 |
| Reply to Response to Cross Motion to Dismiss for Lack of Jurisdiction | RE 72 PAGE ID #702 |
| Order Granting Motion to Dismiss | RE 74 PAGE ID #742 |
| Motion for Temporary Restraining Order | RE 21 PAGE ID #147 |
| DFAP Application | RE 1-1 PAGE ID #30 |
| Mary Ferguson Declaration | RE 29-1 |
| Claudette Jackson Declaration | RE 29-2 |
| Allie Tillis Declaration | RE 54-1 |
| Tom Burrell Declaration | RE 4 and RE 28-1 |