# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## BLACK FARMERS AND AGRICULTURALISTS ASSOCIATION INC., THOMAS BURRELL, MARY FERGUSON, CLAUDETTE JACKSON, MAUZIE FURLOW AND ALLIE TILLIS

### Plaintiffs-Appellants

### VS.

## THOMAS J. VILSACK AND ZACH DUCHENEAUX

### Defendants-Appellees

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
## CASE NO.  2:23-CV-2527-SHL-cgc

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Percy Squire, Esq. (0022010)
341 S. Third Street, Suite 10
Columbus, Ohio 43215
614-224-6528 (T)
614-224-6529 (F)
psquire@sp-lawfirm.com
Counsel for Appellants

# TABLE OF CONTENTS

## Table of Contents

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................5

    A.  LIKELIHOOD OF SUCCESS ON MERITS ................................................... 7

    B.  REVIEW OF USDA ACTION – "ARBITRARY AND CAPRICIOUS" TEST ............. 14

    C.  RELIANCE ON IMPERMISSIBLE FACTORS ............................................ 16

    D.  NO REASONABLE RELATIONSHIP TO STATUTORY PURPOSE ......................... 20

    E.  UNSUPPORTED BY ANY REASONING OR BASED ON SERIOUSLY FLAWED REASONING ................................................................................. 22

    F.  INCONSISTENCY WITH PRIOR ACTIONS ............................................... 22

    G.  FAILURE TO CONSIDER ALTERNATIVES ............................................... 23

    H.  DISPROPORTIONATE SANCTIONS ...................................................... 23

    I.  IRREPARABLE HARM ....................................................................... 24

    J.  HARM TO OTHERS AND PUBLIC INTEREST .......................................... 25

CONCLUSION .......................................................................................................26

CERTIFICATE OF COMPLIANCE .....................................................................27

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

**Cases**

ACLU v. McCreary County, 354 F. 3d 438 (6th Cir. 2003). ...................................24

Bennett v. Spear, 520 U.S. 154, 177-78 (1997)........................................................15

Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974) ......................26

City of Memphis v. Greene, 451 U.S. 100, 122-24, 101 S. Ct. 1584, 67 L. Ed. 2d 769 (1981)................................................................................................................17

Consolo v. Federal Maritime Commission, 383 U.S. 607 (1966). ..........................16

Fayette County, 118 F. Supp. 3d at 1349................................................................26

Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006) (Hispanic farmers ...................11

Garcia v. Veneman, No. 1:00cv-02445 (D.D.C. June 30, 2006)................................9

Gerber v. Herskovitz, 14 F.4th 500 (6th Cir. 2021)..................................................17

Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422-437, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968); ...........................................................................................................19

Keepseagle v. Veneman, No. 1:99-cv-03119 (D.D.C. Feb. 11, 2008), ECF No. 460 (Native American farmers)................................................................................9, 10

Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006) (female farmers)........................11

Love v. Veneman, No. 1:00-cv-02502 (D.D.C. July 13, 2012), ECF No. 160 (female farmers) ...............................................................................................9, 10

Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991) .......................................................................................................24

Motor Vehicle Mrfs v. Association v. State Farmers Mmt. Auto Insurance Company, 463, U.S. 29 (1983).............................................................................15

Obama for America v. Husted, 697 F.3d 423 (6th Cir. 2012)..................................24

Pigford v. Glickman , 185 F.R.D. 82, 86 (D.D.C. 1999)................................. 8, 9, 10

S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 852 (6th Cir. 2017) .......................................................................................................24

State of. Ohio ex rel. Celebrezze ............................................................................24

Sullivan v. Little Hunting Park, supra, ...................................................................19

The Estate of Earnest Lee Boyland, el al. v. United Slates Department of Agriculture, Case No. 17-5082................................................................................7

Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 439, 93 S. Ct. 1090, 35 L. Ed. 2d 403 (1973)..........................................................................................19

United States v. Brewis, 49 F.3d 1162 (6th Cir. 1995)............................................19

United States v. Greer, 939 F.2d 1076, 1091 (5th Cir. [**6] 1991), aff'd en banc, 968 F.2d '433 (5th Cir. 1992), cert. denied, 113 S. Ct. 1390 (1993)...................18

Virginia Petroleum Jubbers Association v. Federal Power Commission, 259 F. 2d 921 (D.C. Cir. 1958)..............................................................................................15

Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir. 1977)..................................19

Wis. Gas Co. v. F. E. R. C., 758 F.2d 699, 674 (D.C. Cir. 1985)...........................24

Wis. Gas Co. v. Fed. Energy Regal Comm 'n, 758 F.2d 669, 674 (D.C. Cir. 1985)
..............................................................................................................................24

## Other Authorities

42 U.S.C. § 1981....................................................................................................19

42 U.S.C. §1982.............................................................................................. passim

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 741, 112 Stat. 2681 ........................................................9

# INTRODUCTION

Appellants, Black Famers & Agriculturalists Association, Inc. (hereinafter "BFAA"); Thomas Burrell, Mary Ferguson, Claudette Jackson and Mauzie J. Furlow brought this consolidated proposed class action against Appellees, Thomas J. Vilsack and Zach Ducheneaux. Appellants challenged the lawfulness of final agency action taken by the United States Department of Agriculture that barred the estates of deceased farmers who had been discriminated against prior to 2021 in a USDA farm loan program, from participation in a remedial program authorized by the Inflation Reduction Act. Appellants sought a preliminary injunction against USDA. The district court denied Appellants' Motion for Preliminary Injunction and granted Appellees Motion to Dismiss Appellants timely appealed and now seek an injunction pending appeal.

The United States Department of Agriculture , "Discrimination Financing Assistance Program, ("DFAP") was authorized under Section 22007 of the Inflation Reduction Act (hereinafter "IRA"). The IRA made available $2.2 billion in financial assistance to farmers, ranchers and first landowners who experienced discrimination in a USDA farm lending program before January 1, 2021. Appellants challenged USDA's exclusion from DFAP of applications on behalf of the estates of farmers, ranchers and first landowners ,referred to hereinafter as "Legacy Applications", from DFAP eligibility, given the absence of any specific language in §22007 that limited

eligibility to living farmers only . Prior to DFAP, USDA accepted Legacy Applications in its remedial programs that addressed past USDA discrimination.

Appellants challenged the DFAP Legal Application exclusion under the Administrative Procedures Act, 5 U.S.C. §706 as arbitrary, capricious and an abuse of discretion or otherwise not in accordance with law. Appellants requested an injunction which the district court denied. Appellants also filed Due Process and Separation of Power claims.

In determining whether §22007 authorized exclusion of Legacy Application, the district court applied the now discredited narrow standard of review that "an agency [must] examine this relevant data and articulate a satisfactory explanation for its action." Tennessee v. United States Dep't of Agric. No. 3:22-cv-257, 2023 WI, 3048342, at *14 (E.D. Tenn. Mar. 29, 2023) (quoting F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). But "a court is not to substitute its judgment for that of the agency and should uphold a decision of less than ideal clarity lithe agency's path may reasonably be discerned." Fox Television Stations Inc., 556 U.S. at 513-14 (quoting Bowman Transp., Inc. v. Ark.—Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (internal quotations omitted)).

The Court held the ineligibility of Legacy Applications … comes from Congress's language in appropriating the funds, not from the USDA. (EFC No. 64-1.) The district court stated  Section 22007 of the IRA states that Congress

appropriated funds "for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January I, 2021, in Department of Agriculture farm lending programs." Pub. L. No. 1 17-169, § 22007, 136 Stat. 1818, 2023 (2022). The district court found the plain language of Section 22007 makes clear that it is designed to provide financial assistance to claimants who have experienced discrimination; it does not permit claims on behalf of others, including estates. Moreover, the word "assistance" means "[t]he act of helping or aiding." Assistance, Black's Law Dictionary (11th Ed. 2019). The use of the word assistance, rather than compensation, supports the idea that the funding was intended to provide prospective relief for living farmers, rather than to compensate the families of deceased ones.

The Court reached its conclusion by applying the narrow standard employed to review final agency action that  was rejected recently by the United States Supreme Court in Loper Bright Enterprises v. Raimondo, 603 U.S. _No. 22-451 (June 28, 2024). Loper states courts reviewing agency action under the Administrative Procedure Act "must exercise their independent judgment" and may not defer to agency interpretation of the law simply out of deference to agency technical expertise.

The Court stated in Loper that the text of the APA requires reviewing courts to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. See, 5 U.S.C. §706. Loper directed courts to "exercise their independent judgment in deciding whether an agency has acted within its statutory and authority.

Here the district court found the agency's exclusion of Legacy claims from DFAP was required by the language in §22007 which states "a program to provide financial assistance…to farmers, ranchers or forest landowners determined to have experienced discrimination prior to January 1, 2021 in a USDA farm lending program, despite the absence of any language in §22007 compelling that result. In addition the district court did not answer the question  whether the exclusion of the Legacy Application means an applicant who dies after filing an application thereafter becomes ineligible? The terms farmers, ranchers or forest landowners, should have been construed by the district court under the standard announced in Loper rather than the narrow standard employed.

Loper states:

> Courts exercising independent judgment in determining the meaning of statutory provisions, consistent with the APA, may—as they have from the start seek aid from the interpretations of those responsible for implementing particular statutes. See Skidmore, 323 U. S., at 10. And when the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court, wider the APA is, as always, to independently interpret the statute and effect oak' I lie will of Congress subject to constitutional limits. The court fulfills that

role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in "'reasoned decision making'" within those boundaries. <u>Michigan v. EPA</u>, 576 U. S. 743, 75(1 (quoting <u>Allentown Mack Soles & Service, Inc. v. NLRB</u>, 522 U. S. 359, 374). By doing so, a court upholds the traditional conception of the judicial function that the APA adopted.

Appellants here seek an injunction pending appeal under which USDA must reopen its window for the acceptance of Legacy Applications pending the outcome of this appeal prior to the exhaustion of the revenue appropriated by Congress for farmers, ranchers and forest landowners discriminated against by USDA.

## ARGUMENT

Appellants seek an order that suspends the deadline for DFAP applications and enjoins USDA from interpreting the statutory terms "farmers venders and forest landowners" to exclude their estates.

To invoke such a remedy, the Appellants must meet the standards for preliminary injunctive relief. See, <u>Roberts v. Neace</u>, 958 F.3d 409, 412-13 (6th Cir. 2020) (per curiam). Appellants must also show that they require this court's immediate intervention now, lest they be irreparably harmed before their appeal can be heard. That is the case here as discussed below.

In determining whether to grant an injunction pending appeal, a court conducts the same general analysis it would in considering an appeal from a preliminary injunction. <u>Overstreet v. Lexington-Fayette Urb. Cnty. Gov't</u>, 305 F.3d 566, 572 (6th Cir. 2002). The Court balances four factors in determining whether to grant such relief: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." Id. at 573. The movant bears the burden of "proving that the circumstances clearly demand" the injunction. Id. Because a motion for an injunction pending appeal does not require us to review a district court decision or order, appellate review is de novo. <u>A. Philip Randolph Inst. v. Husted</u>, 907 F.3d 913, 917 (6th Cir. 2018) (per curiam) (order).  Although the Court's inquiry involves balancing multiple factors, "the existence of an irreparable injury is mandatory." <u>D.T. v. Sumner Cnty. Schs.</u>, 942 F.3d 324, 327 (6th Cir. 2019). In other words, "'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" <u>Memphis A. Philip Randolph Inst. v. Hargett</u>, 978 F.3d 378, 391 (6th Cir. 2020) (quoting D.T., 942 F.3d at 326-27). That injury "'must be both certain and immediate,' not 'speculative or theoretical.'" D.T., 942 F.3d at 927 (quoting <u>Mich. Coal. of Radioactive Material Users, Inc. v.</u>

Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991)). Here, unless an injunction is granted USDA will expend all revenue without Appellants' applications even being considered. This outcome is not authorized by §22007. Appellants can not be disregarded as n eligible farmer " if they were discriminated against prior to January 2021, when a farmer who may have died after filing a DFAP application is not excluded.

On September 23, 2023, USDA extended the DFAP application deadline until January 14, 2024. The district court held on January 9, 2024 that Legacy Application were ineligible . The application window is now closed. Appellants seek here an order that reopens the DFAP application window and requires USDA to accept Legacy Applications pending a final determination of the appeal.

## A.    LIKELIHOOD OF SUCCESS ON MERITS

Over the past several years, USDA has resolved discrimination lawsuits with several different groups of farmers. BFAA has a long history of advocacy on behalf of Black farmers discriminated against by USDA. BFAA has also advocated on behalf of Black farmers who because of the adverse financial impact of USDA racial discrimination, lost the ability to devise farm land to their heirs. In one case brought by BFAA the United States Circuit Court of Appeals stated in The Estate of Earnest Lee Boyland, el al. v. United Slates Department of Agriculture, Case No. 17-5082, a case involving BFAA members, "farmers' bottom lines fluctuate with

the weather and crop prices, so "many farmers depend heavily on the credit and

benefit programs of the United States Department of Agriculture

to take them from one year to the next." Pigford v. Glickman , 185 F.R.D. 82, 86

(D.D.C. 1999) (footnote omitted). If a farmer's crops fail, "he may not have

sufficient resources to buy seeds to plant in the following season"; if he needs a new

grain harvester, "he often cannot afford to buy the harvester without an extension of

credit." Id. "Because of the seasonal nature of farming, it also is of utmost

importance that credit and benefit applications be processed quickly or the farmer

may lose all or most of his anticipated income for an entire year." Id.

The Boyland Court stated, "public protests over discrimination in USDA's

credit and benefit programs spurred the Department to investigate. That scrutiny

uncovered a widespread pattern of discrimination in the Department's agricultural

credit and benefit programs. In 1996, then-Secretary of Agriculture Dan Glickman

appointed a Civil Rights Action Team to assess the Department's history of racial

discrimination and recommend changes. See id. at 88. The Action Team documented

extensive economic harm to minority farmers from discrimination in USDA

programs. See id. at 86-88. That discrimination owed partly to USDA's practice of

delegating loan application decisions to small, local committees in each county. Id.

at 86. The county committees were far less diverse than the communities they served.

Id. at 87. USDA denied or delayed processing loan applications, approved

insufficient amounts, discriminatorily denied access to loan servicing options, or imposed restrictive conditions on loans because of the applicants' race, sex, or ethnicity. See Fourth Am. Compl. 3, <u>Love v. Veneman</u>, No. 1:00-cv-02502 (D.D.C. July 13, 2012), ECF Docket No. 160 (female farmers); Eighth Am. Compl. 2, <u>Keepseagle v. Veneman</u>, No. 1:99-cv-03119 (D.D.C. Feb. 11, 2008), ECF Docket No. 460 (Native American farmers); Third Am. Compl. 13, <u>Garcia v. Veneman</u>, No. 1:00cv-02445 (D.D.C. June 30, 2006), ECF Docket No. 144 (Hispanic farmers); <u>Pigford I</u>, 185 F.R.D. at 87 (black farmers). claims formed the core of the four lawsuits filed against USDA on behalf of black, Native American, women, and Hispanic farmers.

In 1998, Congress responded to the farmers' predicament by lifting the time bar for farmers who had made timely efforts to seek administrative redress for credit discrimination but were stymied by the dysfunction at USDA. See 7 U.S.C. § 2279 note (Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 741, 112 Stat. 2681) ("Appropriations Act"). The Appropriations Act tolled the statute of limitations for two years after its passage from October 1998 to October 2000— for people who (1) alleged non-employment-related discrimination by USDA occurring between January 1, 1981, and December 31, 1996, and (20 had filed a complaint with USDA before July 1, 1997.

To date, USDA has resolved the discrimination lawsuits of four groups of farmers. For each group, the only farmers permitted to participate in the claims-resolution processes established in response to these cases were those who had, before the suits were filed, complained in some manner of USDA's discrimination. Framework for Hispanic or Female Farmers' Claims Process ¶¶ VIII.A VII.B, VIII.C.1 g. <u>Love</u>, No. 1:00-cv-02502 (D.D.C. Jan. 20, 2012), ECF Docket No. 155-1 ("<u>Garcia/ Love Framewo</u>rk"); <u>Keepseagle</u>, No. 1:99-cv-03119, 2001 W1, 34676944, at *6 (D.D.C. Dec. 12, 2001); <u>Pigford I</u>, 185 F.R.D. at 92.

USDA settled with the class of Black Farmers first, in 1999, in <u>Pigford I</u>. 185 F.R.D. 82. The court approved the creation of a two-track dispute resolution mechanism for distributing proceeds to claimants. Under that process, claimants with less documentary evidence of discrimination received capped payments, while claimants with more documentary evidence could seek to prove and recover actual damages. <u>Pigford I,</u> 185 F.R.D. at 95-97.

> In order to be eligible for relief, a claimant must submit his completed claim package to the facilitator postmarked within 180 days of the date of entry of this Consent Decree, except that a claimant whose claim is otherwise timely shall have not less than 30 days to submit a declaration pursuant to subparagraph (b)(iii), above, after being
>
> (g) A claimant who satisfies the definition of the class in ¶ 2(a), above, but who fails to submit a completed claim package within 180 days of entry of this Consent Decree may petition the Court to permit him to nonetheless participate in the claims resolution procedures. The Court shall grant such a petition only where the claimant demonstrates that

his failure to submit a timely claim was due to extraordinary circumstances beyond his control.

Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999) (Emphasis added.)

The process established in Pigford I became a template for the other cases. Next, USDA settled a class action suit with Native American farmers. See Keepseagle, No. 1:99-cv-03119, 2012 WL 13098692, at *1 (D.D.C. Dec. 28, 2012). Similar lawsuits by Hispanic and female farmers followed, but did not result in class-wide settlements because neither case was certified as a class action. Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006) (Hispanic farmers); Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006) (female farmers). Instead, USDA voluntarily created a joint claims process for both Hispanic and female farmers. See Garcia/Love Framework. Claimants who wished to recover under the Garcia /Love Framework agreed, in the claim packets they submitted, to release their individual claims against USDA. See id. ⁋ 5; Settlement Agreement, Love, No. 1:00-cv-02502 (D.D.C. Feb. 3, 2017), ECF Docket No. 2751.

Despite the various efforts outlined above discrimination problems have continued to plague USDA's lending programs.

As a result, Congress enacted a race-based discrimination loan-forgiveness program in the American Rescue Plan of 2021 (ARPA). Among other things, ARPA provided debt relief to "socially disadvantaged" farmers and ranchers. The phrase "socially disadvantaged" included racial classifications. To be eligible for ARPA's

debt relief, farmers and ranchers had to be Black or African American, American Indian or Alaskan native, Hispanic of Latino, or Asian American or Pacific Islander. This program was codified in §1006 of ARPA.

The race-based criterion for relief under §1006 of the ARPA, was challenged in multiple cases that alleged that these racial classifications violated the Equal Protection Clause of the United States Constitution. The program was therefore suspended.

In response to Equal Protection challenges §1006 of the ARPA was amended by §22007 of IRA.

Section 22007 states:

Section 1006 of the American Rescue Plan Act of 2021 (7 U.S.C. 2279 note; Public Law 117-2) is amended to read as follows:

(e) DISCRIMINATION FINANCIAL ASSISTANCE.—In addition to amounts otherwise available, there is appropriated to the Secretary of Agriculture for fiscal year 2022, to remain available until September 30, 2031, out of any money in the Treasury not otherwise appropriated, $2,200,000,000 for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture farm lending programs, under which the amount of financial assistance provided to a recipient may be not more than $500,000, as determined to be appropriate based on any consequences experienced from the discrimination, which program shall be administered through 1 or more qualified nongovernmental entities selected by the Secretary subject to standards set and enforced by the Secretary. (Emphasis added.)

On July 7, 2023 USDA published application guidelines to implement §22007.

Among these guidelines was no exceptions January 13, 2024 application deadline.

Also among the DFAP guidelines are eligibility requirements that contradict the terms of Section 22007 of the IRA which amended Section 1006 of the ARPA.

In March 2021, Congress passed the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021), which provided economic aid and support to the agricultural sector. See §§ 1001-1007. Section 1005 of ARPA provided for payments of up to 120 percent of certain USDA farm loan debts held by "socially disadvantaged farmer[s] or rancher[s]," a group defined to include those who "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." § 1005; 7 U.S.C. § 2279(a)(5)-(6). In addition, Section 1006 provided for "financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary." § 1006. Pub. L. 117-169, 136 Stat. 1818 §§ 22007-08. The current exclusions of Legacy Application is not authorized by the terms of §220007. The statute merely says "farmer" an application submitted on behalf of a decedent "famer" is still a farmer.

USDA asserted that the action here by USDA was not final.

The APA allows judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. For an agency action to qualify as final, the action must (1) "mark[] the consummation of the agency's decision making process" and (2) either determine "rights or obligations [or produce] legal consequences." Texas v. EEOC, 933 F.3d 433, 441 (5th Cir. 2019) (quoting Bennett v. Spear, 520 U.S. 154,177-78 (1997)). This is "a jurisdictional prerequisite of judicial review." Louisiana v. U.S. Army Corps of Eng'rs, 834 F.3d 574,584 (5th Cir. 2016). Appellees contend DFAP didn't consummate USDA's decision making process. That's because a policy statement isn't final until the agency applies it "in a particular situation" to an affected person or entity. Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 253 (D.C. Cir. 2014) (quotation omitted). Here DFAP is the policy of USDA. USDA has made a decision to exclude Legacy. Likewise with the second finality prong. The action of DFAP staff of forbidding Legacy applications produces consequences (reiterating that binding effect upon the agency is the key inquiry and explaining that " [w]hether an action binds the agency is evident if it either appears on its face to be binding[] or is applied by the agency in a way that indicates it is binding" (quotation omitted)).These facts establish that DFAP was final agency action.

## B.     REVIEW OF USDA ACTION – "ARBITRARY AND CAPRICIOUS" TEST

The principal statute authorities that govern USDA action in connection with implementation of §22007 are 5 U.S.C. §§ 701-706 which codify Section 10 of the Administrative Procedure Act under §702 a person suffering a legal wrong or who is adversely affected or aggrievedly agency action.

Judicial review was sought by Appellants of USDA action which is final and for which there is no other adequate remedy. The appropriateness of review of this nature was recognized in <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997). The USDA actions complained of herein constitute the consummation of USDA's decision making. Legal consequences flow from USDA's action because assistance is only available in accordance with the terms complained of here by Appellants. Accordingly, this Honorable Court has authority under §705 of the Administrative Procedure Act to enjoin USDA's actions complained of here. See, <u>Virginia Petroleum Jubers Association v. Federal Power Commission</u>, 259 F. 2d 921 (D.C. Cir. 1958).

The actions complained of herein are not authorized under §22007. This Court therefore has authority to review the measures complained under "the arbitrary, capricious, abuse of discretion" standard.  See, <u>Motor Vehicle Mrfs v. Association v. State Farmers Mmt. Auto Insurance Company</u>, 463, U.S. 29 (1983).

Under the arbitrary and capricious test, the actions complained of by Appellants here should be enjoined or at a minimum suspended temporarily.

Specifically USDA's actions should be enjoined because:

1. USDA's application procedures rely on impermissible factors;

2. There is no reasonable relationship between the challenged factors and §22007;

3. The actions are not supported by reason;

4. USDA has failed to consider key aspects of the procedures enacted;

5. The procedures are inconsistent with prior USDA actions to address discrimination;

6. USDA has not considered alternative solutions;

7. USDA has failed to respond to questions concerning the January 14, 2024 deadline; and

8. The Sanction for noncompliance is draconian.

See, Consolo v. Federal Maritime Commission, 383 U.S. 607 (1966).

## C.     RELIANCE ON IMPERMISSIBLE FACTORS

The USDA rule that that excludes legacy applications from DFAP eligibility denies equal rights to Appellants with respect to inheriting property in violation of 42 U.S.C. §1982.

Congress has enacted §22007 to address long standing discrimination by USDA. Among the historic wrongs perpetuated by USDA and recognized in the Pigford litigation, was the intentional racially motivated denial of farm loans to Black Farmers. This intentional racial discrimination resulted not only in the loss of credit by the applicants, it also resulted in the denial of the right of the discriminated

against applicant's heirs to inherit, purchase, lease, sell, hold and convey real and personal property in violation of 42 U.S.C. §1982. In other words, but for USDA's racially specific discrimination against Blacks, many BFAA members, such as Ms. Ferguson and Ms. Jackson, as well as BFAA associates such as Ms. Tillis, these individuals would have the same right to inherit as White citizens whose forebearers were not denied USDA loans on the basis of race. See, ECF Docket No. 28-1 "Burrell Declaration. ECF Docket No. 2901 "Ferguson Declaration and ECF Docket No. 29-2, "Jackson Declaration". The Declaration of Allie Tillis is attached as Exhibit A.

The current USDA exclusion of legacy applications, perpetuates this past discrimination. The United States Court of Appeals stated in <u>Gerber v. Herskovitz</u>, 14 F.4th 500 (6th Cir. 2021).

> 42 U.S.C. Sec. 1982. Section 1982 guarantees to all citizens the same rights "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To violate the statute, the challenged action must impair a property interest, say by decreasing the value of the property or making it significantly more difficult to access. <u>City of Memphis v. Greene</u>, 451 U.S. 100, 122-24, 101 S. Ct. 1584, 67 L. Ed. 2d 769 (1981).

Here Appellant's ancestors land was decreased in value by USDA's racially based loan denials. Moreover, the ancestors ability to bequeath land was also impaired. These USDA transgressions, which USDA has admitted and §22007 implicitly recognizes, are not subject to redress because of the irrational exclusion

of legacy claims as described in the Declaration of Mr. Burrell, Ms. Jackson, Ms. Ferguson and Ms. Tillis as representatives of a putative class of aggrieved claimants.

USDA has offered no explanation for its perpetuation and its reliance on this historic discrimination in violation of 42 U.S.C. §1982.

The district Court should have given broad construction to the scope of §1982 and its impermissible violation here.

Courts have historically given broad deference to 42 U.S.C. §1982. For instance in:

> United States v. Greer, 939 F.2d 1076, 1091 (5th Cir. [**6] 1991), aff'd en banc, 968 F.2d '433 (5th Cir. 1992), cert. denied, 113 S. Ct. 1390 (1993).
>
> Section 1982 protects the right of citizens to "hold" real and personal property. It states:
>
> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
>
> Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to "prohibit all racial discrimination, private and public, in the sale and rental of property." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 20 L. Ed. 2d 1189, 88 S. Ct. 2186 (1968). In Jones, the court looked to the legislative history of Section 1982--the debates surrounding the Civil Rights Act of 1866--and explained that Section 1982 was intended to do more than destroy the discrimination embodied by the Black Codes: "It would affirmatively secure for all men, . . . the 'great fundamental rights." Id. at 432 (quoting Cong. Globe, 39th Cong., 1st Sess., 475). Included among these "basic civil rights" were the right to acquire property and the right "to go and come at pleasure." Id. In passing the Civil Rights Act of 1866, Congress assumed "that it was approving a comprehensive statute forbidding all

racial discrimination affecting the basic civil rights enumerated in the Act." Id. at 435

See, <u>United States v. Brewis</u>, 49 F.3d 1162 (6th Cir. 1995).

42 U.S.C. § 1982 provides,

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Thus, just as 42 U.S.C. § 1981 requires that all citizens have an equal right to contract, 42 U.S.C. § 1982 mandates that all citizens have an equal right to hold and convey property. Both statutes, originally enacted as part of the Civil Rights Act of 1866, were intended to uproot the institution of slavery and to eradicate its badges and incidents. See <u>Jones v. Alfred H. Mayer Co.,</u> 392 U.S. 409, 422-437, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968); <u>Tillman v. Wheaton-Haven Recreation Assn.,</u> 410 U.S. 431, 439, 93 S. Ct. 1090, 35 L. Ed. 2d 403 (1973). And this identity of historical source and similarity of language and intent are particularly significant in view of the statement of the Supreme Court in <u>Sullivan v. Little Hunting Park, supra,</u> that

"A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by Section 1 of the Civil Rights Act of 1866 . . . from which § 1982 was derived." Id. 396 U.S. at 237.

See, <u>Winston v. Lear-Siegler, Inc.,</u> 558 F.2d 1266 (6th Cir. 1977).

The USDA exclusion of Legacy claims perpetuates past USDA's infringement upon the right to inherit and bequeath property. USDA has relied upon factors such as an alleged limited resource pool, to exclude legacy claims. In the face of perpetuating racial discrimination in violation of 42 U.S.C. §1982, such a rule is arbitrary and capricious. USDA has offered no justification for this exclusion.

The DFAP process implemented by USDA relies on impermissible factors because it excludes applications merely because they are submitted on behalf of an estate. There is no permissible legisltative basis in §22007, 42 U.S.C. §1982 or in the Constitution upon which this exclusion may lawfully be based. Accordingly, the present DFAP rule on legacy claims fails the first arbitrary and capricious factor.

D. NO REASONABLE RELATIONSHIP TO STATUTORY PURPOSE

USDA has not articulated any relationship between the exclusion of estates and the purpose of §22007. Congress has clearly stated in the IRA, §22007 is designed to compensate for decades of racial discrimination in USDA farm lending programs. USDA discrimination was more insidious in the distant past then it has been recently. The Declaration of Allie Tillis attests to the historic nature of this racial discrimination. There is no relationship known to Appellants between the ameliorative interests of §22007 and the USDA imposed estate exclusion. This lack of a relationship is additional evidence of the arbitrary nature of the USDA rule, excluding estate claims.

    a. The exclusion of heirs filing on behalf of deceased persons. Both <u>Pigford I</u> and <u>II</u> allowed for an heir to tile on behalf of decease claimants. See Exhibit A at Section 4 (For Decease Claimants...). https://www.blackfarmercase.com/documentskjaim%20form.pdf

    b. Congress specifically instructed the USDA to allow claimants who were discriminated in obtaining a Housing Loan (15 U.S.C. Section

1691 (ECOA) from USDA[1] to be a party to the referenced settlements. See Exhibit B, Pub. Law 105-277, Section 741.

c. The <u>Pigford I</u> Consent Decree made provisions for Later Filers.

d. <u>Pigford I</u> claimants had appeal rights.

e. <u>Pigford I and II</u> claimants were made aware of the dollar amount to receive if their claims were approved-to include tax benefits, debt relief and programmatic relief (Priority Consideration). Here, there is no specified minimum about of settlement. Both <u>Pigford I and II</u> provided either Track A ($50,000) or Tract B amounts. In re, provided either Tier I ($50,000) or Tier II amounts.

f. Both Pigford I and II were required to have an attorney sign off on the Claim Form. See, <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970) at 270 (...right to counsel).

g. Current Claimants are discouraged' from using associational help to assist with the filling out of Claim Form. See <u>UAW v. Brock</u>, 477 US 274 (1986) at 289-290. Moreover, the <u>Pigford I</u> Consent Decree expressly stated than USDA would work with organizations' who were otherwise working with Black farmers.

h. Failure to give notice to know USDA applicant in previous lawsuits or previous and/or current USDA borrowers. See, declaration of Thomas Mason, Jr. (Mother Pearl Mason, deceased owing USDA for previous Operating Loans).

i. The substantial evidence standard appears more onerous than the preponderance standard.

---

[1] The term "USDA" shall include the United States Department of Agriculture and all of its agencies, instrumentalities, agents, officers, and employees, including, but not limited to the state and county committees which administer USDA credit programs, and their staffs. Consent Decree at 1(m).

USDA has not articulated in its administrative record or during any of the training sessions or seminars on DFAP grounds for the exclusion of estates. See, Declaration of Ferguson and Jackson. ECF Docket No. 29-1 and 29-2.

E.     UNSUPPORTED BY ANY REASONING OR BASED ON SERIOUSLY FLAWED REASONING

The exclusion of estates and the failure to accord sufficient time for the probate process to occur, is not supported by any reasoning articulated at the seminars attended by Appellants or in USDA's published guidance.     It is illogical to purport to provide an administrative remedy such as DFAP to compensate for historic lending discrimination and to then exclude the estates of the person most frequently denied relief racially discriminating on grounds, ex slaves and the ancestors of Appellants. This flawed reasoning ties in closely with the failure of USDA to consider the key rationale for §22007's enactment, the correction of historic injustice by USDA upon Black farmers and their families.

F.     INCONSISTENCY WITH PRIOR ACTIONS

In Pigford the application was a mere three pages. Although there was a fixed application deadline, an appeal process was provided for. See, Burrell Declaration. ECF Docket No. 28-1.

In this instance there is no appeal. This inconsistency has not been explained in any of the USDA guidelines or during seminars attended by BFAA members. See, Burrell, Jackson and Ferguson Declarations.  Id.

### G.    FAILURE TO CONSIDER ALTERNATIVES

The administrative record in this matter does not indicate that USDA gave any consideration to permitting legacy applications, devising a simpler application form or providing an appeal from the January 13, 2023, if warranted.  This state of matters also reflets USDA's refusal to explain to applicants such as Ferguson and Jackson reasons their decedent's applications could not be accepted. See, ECF, Docket No. 29-1 and 29-2.

### H.    DISPROPORTIONATE SANCTIONS

The blanket preclusion of legacy claims without any opportunity to appeal or obtain an extension is not justified by any authority in §22007. USDA has unilaterally imposed bright line rules that have no basis in the enabling legislation, clearly violate precedent and most importantly perpetuate past racial discrimination in violation of 42 U.S.C. §1982.

Given these facts and the affidavits of Mr. Burrell, Ms. Jackson, Ms. Ferguson and Ms. Tillis, Appellants are likely to succeed on the merits of their APA claims.

# I.  IRREPARABLE HARM

Courts presume irreparable harm in cases involving Constitutional violations. Obama for America v. Husted, 697 F.3d 423 (6th Cir. 2012); also see ACLU v. McCreary County, 354 F. 3d 438 (6th Cir. 2003).  Here the guidelines announced by USDA precluding decedents estate applications violates Appellants rights under 42 U. S. C. §1982 and the Equal Protection Clause. Such a Constitutional violation constitutes irreparable harm, as a matter of law.

For irreparable harm to meet the standard for a preliminary injunction, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991) (citing Wis. Gas Co. v. Fed. Energy Regal Comm 'n, 758 F.2d 669, 674 (D.C. Cir. 1985)). Economic loss generally "does not constitute irreparable harm, in and of itself." State of. Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n, 812 F.2d 288, 290 (6th Cir. 1987) (citing Wis. Gas Co. v. F. E. R. C., 758 F.2d 699, 674 (D.C. Cir. 1985)). "An injury is irreparable if it is not 'fully compensable by monetary damages.' S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 852 (6th Cir. 2017) (quoting Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012)).

Appellants opportunity to obtain redress for decades of racial discrimination at the hands of USDA is likely dependent upon the effort reflected in §22007 to remedy past discrimination. If action is not taken at this juncture to assure that decedent's estates are entitled to file claims, Appellants will be left without a remedy given the passage of time to file complaints under the relevant statutes of limitation. For this reason the arbitrary deadline imposed by USDA will operate as a bar for racial discrimination claims by decedents against USDA.

## J.      HARM TO OTHERS AND PUBLIC INTEREST

As stated above these prongs merge when, as here, the Government is the opposing party. Wilson v. Williams, 961 F.2d 529 (6th Cir. 2020). Section 22007 does not authorize Appellees to establish an expedited no exception application deadline. The irreparable injury that Appellants will suffer absent an injunction outweighs any harm Appellee will suffer if the requested injunction is granted. Appellants will suffer irreparable injury to their fundamental right to be free from unlawful discrimination. By contrast, any potential harm Appellees would have faced under the requested injunction would be substantially less

"If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the

court finds will minimize the irreparable injury." <u>Fayette County</u>, 118 F. Supp. 3d at 1349 (quoting <u>Canal Auth. of Fla. v. Callaway,</u> 489 F.2d 567, 576 (5th Cir. 1974)).

The public interests favors limiting USDA to the authority given by Congress. The public interest also favors providing relief to individuals who have been harmed by governmental action, such as denying financial relief by USDA.

## <u>CONCLUSION</u>

For the above reasons an injunction pending appeal is respectfully requested.

/s/ Percy Squire_____
Percy Squire (0022010)
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

In accordance with the provisions of Fed. R. App. P. 32, the undersigned certifies that this appellate brief complies with the type limitations of this Rule.

1. The brief contains no more than 6918840 words in its entirety.

2. The brief has been prepared in 14-point Times New Roman typeface using Microsoft Word.

*s/Percy Squire, Esq.*_____
Percy Squire, Esq. (0022010)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the electronic mail service, July25, 2024, upon counsel of record

*s/Percy Squire, Esq.*_____
Percy Squire, Esq. (0022010)